647 A.2d 620

**Frank MEDEN, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (BETHENERGY MINES, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 13, 1994.

Decided Aug. 23, 1994.

Petition for Allowance of Appeal Denied April 11, 1995.

69

Daniel G. Walter, for petitioner.

John J. Bagnato, for respondent.

Before CRAIG, President Judge, and DOYLE, McGINLEY, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

DOYLE, Judge.

Frank Meden (Claimant) appeals from an order of the Workmen's Compensation Appeal Board which affirmed an order of a referee denying him total disability benefits.

Claimant worked in the coal mines for thirty-three years, until his last day of work in 1979. Thereafter, he petitioned for total disability benefits under Section 306(a) of the Worker's Compensation Act (Act).[1] A referee determined that Claimant suffered from coal workers' pneumoconiosis but that Claimant was only partially disabled by that disease. By order dated August 11, 1982, the referee awarded Claimant partial disability benefits at the rate of $227.00 per week with benefits commencing on February 24, 1981 and continuing for 500 weeks.[2] The parties stipulated that jobs were available to Claimant within his physical limitations which would pay a wage of $134.00 per week. Claimant's 500 weeks of partial disability benefits were exhausted on September 24, 1990.

On April 8, 1991 Claimant filed a petition for reinstatement of total disability benefits.[3] Before the referee, Claim-

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 511.

2. *See* Section 306(b) of the Act, 77 P.S. § 512.

3. Employer objected to the petition for reinstatement alleging that Claimant should have filed a petition for modification. The referee overruled this objection. Under the facts of this case, where a claimant files a petition for total disability benefits after the expiration of his 500 weeks of partial disability benefits, he or she is technically seeking neither a modification nor a reinstatement of benefits. A reinstatement petition is filed where a claimant's benefits have been suspended or terminated. A modification petition suggests that a claimant is currently receiving benefits which the petitioner seeks to change. Claimant in this case is in a "hybrid" situation where he is receiving no current benefits, since his eligibility for partial disability benefits has been exhausted, but his "benefits" have been neither suspended nor terminated. However, Section 413 of the Act, 77 P.S. § 772, does not make a distinction in the petitions to be filed for reinstatement and modifica-

ant argued that he was entitled to total disability benefits, because he had suffered a deterioration in his physical condition since the time of his prior award for partial disability. In support of that argument, he presented the testimony of Dr. Gordon A. Gress who testified that Claimant's pulmonary condition resulting from coal workers' pneumoconiosis had deteriorated. Although he stated on direct examination that Claimant was "totally disabled," on cross examination he admitted that Claimant was only "partially disabled" from his pulmonary condition alone, but that the addition of other non-work related conditions (a cardiac murmur and arrhythmia), caused greater physical limitations. *Dr. Gress also testified that Claimant could perform sedentary work in a dust free environment.*

Employer also presented medical testimony. Employer's doctor disputed most of Claimant's medical testimony, but admitted that Claimant did have complicated pneumoconiosis and that he would not recommend that Claimant return to the coal mines.

After reviewing the above testimony the referee found that: Based on the evidence submitted, I accept the opinions of Dr. Gress relative to partial disability present based on his pulmonary condition, coal workers' pneumoconiosis, and the opinion of [Employer's doctor] that the Claimant is unable to return to work in the coal mines due to the potential progression beyond the present complicated stage existing. Dr. Gress' opinion of a worsening is accepted, but his opinion on disability is tantamount to partial disability.

Finding of Fact No. 12. Accordingly, the referee denied Claimant's petition for reinstatement of total disability benefits. On appeal to the Board, Claimant did not dispute any of the referee's findings of fact, but challenged the referee's legal conclusions, contending that merely upon a showing that his

tion. Accordingly, the form of the petition is not controlling and such petition will be deemed to have been filed pursuant to whichever section of the Act is appropriate. *See North Philadelphia Aviation Center v. Workmen's Compensation Appeal Board (Regan)*, 121 Pa.Commonwealth Ct. 633, 551 A.2d 609 (1988).

physical condition worsened, the burden shifted to Employer to demonstrate work availability as a matter of law. The Board, however, concluded that Claimant had only reestablished partial disability, not total disability, and since his eligibility for partial disability benefits had expired, the Board held that the referee properly denied his petition. This appeal followed.

Claimant raises only one issue for our review: "Whether a finding that a claimant's work related pulmonary condition has worsened constitutes a finding of increased disability such that the burden must shift to the employer to establish work availability." [4] Claimant correctly argues that "disability" for the purposes of the Act means a "loss of earning power." However, Claimant further contends that the mere worsening of his medical condition *automatically* translates into an increased loss of earning power. Clearly, that is not the law.

The Supreme Court recently analyzed the relationship between physical condition and disability under the Act:

It also appears that 'change in physical condition' gained heightened importance as a factor in the movant's burden of proof [for modification], to the extent of becoming a separate 'requirement', as result of application of a flawed conception of 'disability' under the Act. As we emphasized in *Kachinski* [*v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987)], going back to early cases interpreting the Act, 'we determine the degree of a worker's disability by reference to how the injury affected his earning power.' 516 Pa. at 248, 532 A.2d at 378, citing *Woodward v. Pittsburgh Engineering and Construction Co.*, 293 Pa. 338, 143 A. 21 (1928) ('The disability contemplated by the act is the loss, total or partial, of the earning power from the injury.') See also *Unora v. Glen Alden Coal Co.*, 377 Pa. 7, 104 A.2d 104 (1954) ('In the interpretation of the Workmen's Compensation Act ... the word 'disability' is to be regarded as

4. From the Statement of the Question Involved, Claimant's brief at 2.

synonymous with 'loss of earning power'."); *Petrone v. Moffatt Coal Co.*, 427 Pa. 5, 233 A.2d 891 (1967); *Barrett v. Otis Elevator Co.* 431 Pa. 446, 246 A.2d 668 (1968).

To the extent that cases ... recognized disability (in the physical sense) as an element *distinct* from loss of earning power, they deviated from proper interpretation of the Act. Inasmuch as both capacity to work and availability of work affect the extent of an injured employee's disability (loss of earning power), it follows that disability, for compensation purposes, may change from partial to total or vice versa on a change in one with or without a change in the other. *Dillon v. Workmen's Compensation Appeal Board (Greenwich Collieries)*, 536 Pa. 490, 501, 640 A.2d 386, 391–92 (1994) (emphasis in original). Thus, simply arguing that a claimant's physical condition has changed without presenting evidence of its effect on his ability to work at his light duty job cannot satisfy a claimant's burden of proof. *Volk v. Workmen's Compensation Appeal Board (Consolidation Coal Co.)*, 167 Pa.Commonwealth Ct. 75, 647 A.2d 624 (1994). Hence, a claimant who has exhausted his or her partial disability benefits and seeks benefits for total disability, has the burden of proving that his or her disability, that is, loss of earning power, has increased, *Kunicki v. Workmen's Compensation Appeal Board*, 56 Pa.Commonwealth Ct. 72, 423 A.2d 1368 (1981), not just that his or her medical condition has worsened.

In the instant case, Claimant had been previously awarded partial disability benefits for coal workers' pneumoconiosis, which established that, at the time of the award, August 11, 1982, Claimant could not perform his regular employment in the coal mines. It also established that Claimant could be gainfully employed "topside" in some other employment which would enable him to earn less than his time of injury wage.[5]

In this case, Claimant who was 73 years of age when he filed his petition to reinstate, had exhausted his partial disabil-

5. Whether in fact he ever accepted that other employment is totally irrelevant since Claimant stipulated that he was capable of performing other work which was then currently available; Claimant was only entitled to partial disability benefits, for a period of time which is finite.

ity benefits when he filed his petition for total disability benefits asserting that his medical condition had become worse. While Claimant proved that his medical condition worsened, the referee found as fact, relying on the testimony of Claimant's own medical expert, that Claimant remained partially disabled, and that his loss of earning power had not increased.

Claimant does not directly challenge the validity of the stipulation of work availability that he made when he was awarded partial disability benefits, but argues that "[w]ork that [Claimant] could ... have performed at the time of his original Award and whose availability was stipulated to at that time would be beyond his physical capacity now...." Claimant's Brief at 6. However, Claimant presented absolutely no evidence to support this argument; in fact, Claimant's own doctor's testimony disputes it:

Q: [W]ould you agree with me that Mr. Meden is only partially disabled? That he could do some types of gainful employment in the economy.

A: It's probably true that you could find jobs for him to do. I do think that on the basis of his pulmonary disease with his simple and complex pneumoconiosis, he's at least a partial, but I would admit to you that he may well not be totally disabled on the basis of his pneumoconiosis alone....

Q: If we took him away from a dust hazard, he could do some work, though that's what I'm getting to, on his pulmonary status?

A: He probably could do some type of sedentary jobs. You know, we've talked about this many of times about ticket-taking, and desk work and elevator operating....

Notes of Testimony 1/9/92 at 16–17.

Therefore, the referee correctly determined that Claimant did not sustain his burden of proving that his disability increased from partial to total disability. Further, since Claimant had exhausted his partial disability benefits, the

referee properly held that Claimant was ineligible for any such additional benefits.[6]

Affirmed.

## ORDER

NOW, August 23, 1994, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.

FRIEDMAN, J., concurs in the result only.

**6.** We note that as of the date this case was decided, Claimant will be nearly 78 years old. Although no findings were made concerning his retirement, the Supreme Court has recently held that a claimant who has voluntarily retired from the work place is not entitled to receive benefits for an occupational disease claim, since it is his retirement, not his disability, which causes his loss of earning power. *Republic Steel Corp. v. Workmen's Compensation Appeal Board (Petrisek)*, 537 Pa. 32, 640 A.2d 1266 (1994).